**ARMSTRONG TIRE & RUBBER COMPANY and Liberty Mutual Insurance Companies, Petitioner-Appellants,**

v.

**Wayne F. KUBLI, Respondent-Appellee,**

and

**The Iowa Industrial Commissioner, Respondent-Appellee.**

No. 2–65849.

Court of Appeals of Iowa.

Aug. 25, 1981.

Dorothy L. Kelley and Richard G. Book, Des Moines, for petitioners-appellants.

Robert Pratt, Des Moines, for respondent-appellee.

Heard by OXBERGER, C. J., and DONIELSON, SNELL, CARTER and JOHNSON, JJ.

PER CURIAM.

Petitioners, Armstrong Tire and Rubber Company (employer) and Liberty Mutual Insurance Company (insurance carrier), appeal from a decision on judicial review affirming the commissioner's award of workers' compensation benefits to respondent-claimant, Wayne F. Kubli, for the aggravation of a pre-existing back disease resulting from his employment. Petitioners assert the evidence was insufficient to support a finding that claimant's disability was caused by an injury arising out of his employment and that, as a matter of law, claimant was not entitled to healing period benefits because the evidence was undisputed that he had reached maximum recuperation. We affirm in part and reverse and remand in part.

Claimant, who was fifty-six years old at the time of the administrative hearing, was originally employed by Armstrong in 1965. Prior to this time he had been a farmer and he continued to farm throughout his employment with Armstrong. During his employment with Armstrong he held various positions, all of which involved significant physical exertion.

His back problems first arose in November, 1975, at which time he was a whitewall presorter. In that capacity he was constantly lifting, bending, twisting, and physically carrying tires from one place to another. He was required to carry stacks of smaller tires with weights totalling up to eighty pounds. In November, 1974, while attempting to lift his load of tires, claimant slipped on the wet floor and suffered a "catch" in his back. He reported the incident to the plant nurse and received "pain pills" and "heat treatments." He had no further complaints for approximately a year.

In February, 1975, when he returned to work from a company layoff, he was given a routine physical examination and, although he was not made aware of it then, an x-ray showed narrowing of the L4–L5 disc space, which is indicative of degenerative arthritis. In March of 1976, he began to experience pain in his lower back which was unrelated to any specific incident but associated generally with lifting. Claimant stated in his testimony that his personal work load was heavier at that time and he associated his physical problems with the increase. Defense witnesses, however, testified that although plant production increased during that period, more men were added to claimant's shift, which resulted in a decrease in the workload per man. Nonetheless, because of his continuing back pain, claimant had almost weekly visits with the company medical personnel throughout the remainder of his active employment. He also saw his personal physician and an orthopedic surgeon recommended by the company physician.

In March, 1977, claimant's consulting orthopedic surgeon recommended to the company physician that claimant be put on light duty with a fifty pound weight limit. The company physician concurred. Although the provisions of claimant's union's collective bargaining agreement provided for peremptory transfers when an employee has 15 years seniority, or has a health condition necessitating transfer which is occupationally related, his union could not negotiate his transfer to a less strenuous job because he did not have 15 years seniority and the company considered his disability non-occupationally related. The union did not file a grievance because the company took the initiative and laid off the claimant in March, 1977. During his layoff, claimant received unemployment compensation and contractual supplemental benefits. In March, 1978, claimant was called back to work and given a job pushing 500–600 pound loads on wheels. However, due to his back problems, he went back on layoff after only two days.

On May 4, 1978, claimant filed a petition for arbitration for workers' compensation benefits pursuant to section 86.14, The Code 1977. A hearing was held on December 6, 1978, and a decision for the claimant was filed May 21, 1979. The deputy commissioner found that claimant's back disease was aggravated by his employment activities and that his injury consequently arose

out of and in the course of his employment. The deputy further ordered that defendants pay claimant a healing period beginning on March 25, 1977, and continuing until the terms and conditions of § 85.34(1), Code of Iowa had been met. Petitioners appealed to the Iowa Industrial Commissioner, who adopted the decision of the deputy as the final decision of the agency with a modification which is not at issue here. Application for rehearing of the appeal was filed on June 12, 1980, and was deemed denied in accordance with section 17A.16, The Code 1979. Petitioners thereafter sought judicial review. On September 11, 1980, district court affirmed the agency decision. This appeal followed.

■ **I. Scope of Review.** Our scope of review is not de novo. Our duty is to correct errors of law made by the district court. *Jackson County Public Hospital v. PERB*, 280 N.W.2d 426, 429 (Iowa 1979). We are bound by the commissioner's fact findings if they are supported by substantial evidence in the record made before the agency. *Hawk v. Jim Hawk Chevrolet-Buick, Inc.*, 282 N.W.2d 84, 85 (Iowa 1979); *Auxier v. Woodward State Hospital School*, 266 N.W.2d 139, 143 (Iowa 1978); § 17A.19(8)(f), The Code 1981. We construe such findings broadly and liberally to support rather than defeat the commissioner's decision. *Holmes v. Bruce Motor Freight, Inc.*, 215 N.W.2d 296, 298 (Iowa 1974). "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *General Telephone Company of the Midwest v. Iowa State Commerce Commission*, 275 N.W.2d 364, 370 (Iowa 1979) (quoting *City of Davenport v. PERB*, 264 N.W.2d 307, 311 (Iowa 1978)). The fact that an agency could draw two inconsistent conclusions from the evidence presented to it does not mean that one of those conclusions is unsupported by substantial evidence. *City of Davenport*, 264 N.W.2d at 311. We regard the commissioner's fact findings as tantamount to jury findings; if a jury issue is presented, were the case tried to a jury, the commissioner's findings stand. *Auxier v. Woodward State Hospital School*, 266 N.W.2d 139, 143 (Iowa 1978); *see also*

*Ross v. Ross*, 308 N.W.2d 50 at 52–53 (Iowa 1981); *Temple v. Vermeer Manufacturing Co.*, 285 N.W.2d 157, 160 (Iowa 1979).

■ **II. Jurisdiction.** Within ten days of the filing of their petition for judicial review, petitioners mailed copies of the petition to the industrial commissioner and to the claimant's attorney. Claimant contends this procedure violated section 17A.19(2), The Code, and was thus not sufficient to give the district court jurisdiction of the matter. We conclude that mailing the petition to the attorney's address rather than to claimant's address was not fatal to jurisdiction.

■ In relevant part, section 17A.19(2) provides:

Within ten days after the filing of a petition for judicial review file stamped copies of the petition shall be mailed by the petitioner to all parties named in the petition and, if the petition involves review of agency action in a contested case, all parties of record in that case before the agency. Such mailing shall be jurisdictional and shall be addressed to the parties at their last known mailing address.

Substantial compliance with the statutory prerequisites is essential for the district court to acquire jurisdiction. *Cowell v. All-American, Inc.*, 308 N.W.2d 92, 94 (Iowa 1981); *Economy Forms Corp. v. Potts*, 259 N.W.2d 787, 788 (Iowa 1977). Substantial compliance is satisfied when the petitioner mails the petition to the person and/or address he reasonably believes the respondent wished notice to be sent. *See Cowell*, 308 N.W.2d at 95.

In the present case, claimant appeared through his attorney at all times in the proceedings below. All filings required to be served on the claimant were served on his attorney. Nothing occurred during the course of the proceeding to show claimant either desired or expected any communications to be sent to his personal address. Under these circumstances, as in *Cowell*, petitioner could reasonably conclude that claimant wished all communications in the

proceeding to be sent to his attorney's address. We thus conclude that the mailing substantially complied with section 17A.19(2) and that district court had subject matter jurisdiction.

**III. Preservation of Error.** In his brief, respondent argues that petitioners' claim of lack of substantial evidence to support a causal connection between the alleged injury and employment was not preserved on appeal. We disagree. "[I]n workers' compensation cases appellate review is limited to those matters raised and litigated before the commissioner." *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 184 (Iowa 1980). Since we make anew the determinations made by the district court, it follows that issues not presented to that court cannot be presented for determination for the first time before this court. *Temple v. Vermeer Manufacturing Co.*, 285 N.W.2d 157, 159 (Iowa 1979).

Petitioners, in a letter of August 15, 1979, to the Iowa Industrial Commissioner, argued their appeal from the proposed decision of the presiding officer. In that letter petitioners specifically argued that the proposed arbitration decision, that the claimant's "complaints or condition arose out of or in the course of his employment" was not supported by substantial evidence. In their application for rehearing, petitioners again claimed that the commissioner's decision was unsupported by substantial evidence and referred the commissioner to their arguments in the August 15th letter. In their petition for judicial review to the district court, petitioners alleged that the findings of fact and conclusions of law of the Iowa Industrial Commissioner were unsupported by substantial evidence and they fully briefed the causation issue. On appeal to this court petitioners have again fully briefed the issue.

**IV. Causal Connection.** Petitioners assert claimant has failed to establish by a preponderance of the evidence that his disability was caused by the conditions under which he worked at Armstrong. They argue the evidence shows, instead, that pre-existing degenerative arthritis alone, or

that condition aggravated by his farming activities, is the cause of his disability. They further argue this is a disease that any "rational work" is likely to progress and that it is thus not compensable.

The Iowa Supreme Court addressed this issue in *Musselman v. Central Telephone Co.*, 154 N.W.2d 128, 132 (Iowa 1967), wherein it stated:

> This court has previously held, if a claimant had a preexisting condition or disability, aggravated, accelerated, worsened or "lighted up" by an injury which arose out and in the course of employment resulting in a disability found to exist, he would be accordingly entitled to compensation. See *Nicks v. Davenport Produce Co.*, 254 Iowa 130, 134–135, 115 N.W.2d 812, and citations.

> However, a disease which under any rational work is likely to progress so as to finally disable an employee does not become a "personal injury" under our Workmen's Compensation Act merely because it reaches a point of disablement while work for an employer is being pursued. It is only when there is a direct causal connection between exertion of the employment and the injury that a compensation award can be made. The question is whether the diseased condition was the cause, or whether the employment was a proximate contributing cause. *Littell v. Lagomarcino Grupe Co.*, 235 Iowa 523, 529, 17 N.W.2d 120, and citations. See also *California Notion & Toy Co. v. Industrial Acc. Commission*, 59 Cal.App. 225, 210 P. 524, and Annos. 19 A.L.R. 101; 28 A.L.R. 206; 80 A.L.R. 1304.

In the workers' compensation context a cause is proximate if it is a substantial factor in bringing about the result. *Blacksmith v. All-American, Inc.*, 290 N.W.2d 348, 354 (Iowa 1980). It only needs to be one cause; it does not have to be the only cause. *Id.*

The deputy commissioner found that the claimant was suffering from degenerative back disease and that such condition was aggravated by the claimant's

employment activities. The medical experts for both parties testified that repetitive bending, lifting, and twisting would aggravate the claimant's condition. There is no question that the claimant's employment required that he constantly engage in this type of physical exertion. We therefore cannot say that the commissioner's conclusion that claimant's employment activity was a substantial factor in causing his disability is unsupported by substantial evidence. Furthermore, the evidence that the petitioners argue compels another result is not determinative of the issue for the question is not whether there is sufficient evidence to warrant a decision the deputy commissioner did not make, but rather whether there is sufficient evidence to warrant the decision he did make. *Deaver v. Armstrong Rubber Co.*, 170 N.W.2d 455, 464 (Iowa 1969). We find there is substantial evidence to generate a fact question on the issue of causation and to support the commissioner's findings on this issue.

**V. Award of Healing Benefits.** Petitioners also claim that the commissioner erred in awarding healing period benefits to the claimant because the claimant had reached maximum recuperation from his injury. We agree.

■■■■■ Our workers' compensation statute provides:

HEALING PERIOD. If an employee has suffered a personal injury causing permanent partial disability for which compensation is payable as provided in subsection 2 of this Section, the Employer shall pay to the employee compensation for a healing period as provided in Section 85.-37, beginning on the date of the injury and until he has returned to work or competent medical evidence indicates that *recuperation* from said injury has been accomplished, whichever comes first. (emphasis added).

\*   \*   \*   \*   \*   \*

Section 85.37. Compensation schedule. In all cases where an employee receives a personal injury causing temporary disability, or causing a permanent partial disability for which compensation is pay-

able during a healing period, compensation for such temporary disability or for such healing period shall be upon the basis provided herein . . . .

By the very meaning of the phrase, a person with a "permanent disability" can never return to the same physical condition he or she had prior to the injury. Thus, we believe that "recuperation" as used in this statute refers to that condition in which healing is complete and the extent of the disability can be determined. *See*, 2 A. Larson, The Law of Workmen's Compensation § 57.12 (1981). The healing period may be characterized as that period during which there is reasonable expectation of improvement of the disabling condition," and ends when maximum medical improvement is reached. *Boyd v. Hudson Pulp & Paper Corp.*, 177 So.2d 331, 330 (Fla.1965). That is, it is the period "from the time of the injury until the employee is as far restored as the permanent character of his injury will permit." *Winn Drilling Company v. Industrial Commission*, 32 Ill.2d 144, 145–6, 203 N.E.2d 904, 905–6 (1965). *See also* W. Schneider, Schneider's Workmen's Compensation § 2308 (1957). Thus, the healing period generally terminates "at the time the attending physician determines that the employee has recovered as far as possible from the effects of the injury. *Winn*, 203 N.E. at 906.

■■■ Claimant's orthopedic surgeon testified that claimant's injury was such that from the start, it would not improve but would be aggravated by further physical exertion. Thus, without deciding whether or not claimant could return to substantially similar work, we conclude that claimant is not entitled to recuperation benefits due to the fact that no further improvement of his condition was anticipated.

In light of the above, the only remaining issue is the extent of claimant's disability. Claimant's orthopedic surgeon testified that claimant suffers a forty percent impairment while petitioners' expert assessed the impairment at five percent. Since there is a conflict in the evidence regarding the percent of claimant's disability, we remand

this case to the commissioner for determination of that percentage and for award of benefits in accordance with section 85.34(2), The Code.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.